IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KIM JOHNSON,                      )
                                  )    2:11-003395-GEB-EFB
            Plaintiff,            )
                                  )
      v.                          )    ORDER
                                  )
AUTOZONE, INC.,                   )
                                  )
            Defendant.            )
_____ )

Plaintiff moves under Federal Rules of Civil Procedure ("Rules") 16(b)(4) and 15(a)(2) for an order modifying the Status (Pretrial Scheduling) Order and for leave to file a "First Amendment Complaint." (ECF No. 22.) Defendant moves under Rule 56 for summary judgment, or in the alternative, for partial summary judgment. (ECF No. 15).

For the reasons stated below, Plaintiff's motion to modify the status order is DENIED, and Defendant's motion for summary judgment is GRANTED.

**I. PLAINTIFF'S MOTION TO MODIFY THE STATUS ORDER**

The March 29, 2012 Status (Pretrial Scheduling) Order ("Status Order"), which Plaintiff seeks to amend, prohibits further "amendments to pleadings . . . except with leave of Court for good cause shown." (Order 2:6-8, ECF No. 8.) Plaintiff requests that this provision of the Status Order be modified so that the court could "consider Plaintiff's

1

Motion for Leave to amend her Complaint[,]" in which Plaintiff seeks to "revise her operative complaint by adding a cause of action for Defamation and by removing the 3rd cause of action for sexual harassment." (Pl.'s Mem. of P.&A. in Supp. of Mot. to Modify Court's Status Order & for Leave to File First Am. Compl. ("Pl.'s Mot.") 2:12-18, ECF No. 22-1.)

Plaintiff argues, *inter alia*, "that good cause exists to permit amendment." (Id. at 3:14-15.) Specifically, Plaintiff argues:

> At the time this Court issued its Scheduling Order on March 29, 2012, Plaintiff had no way of knowing that Defendant AutoZone, Inc. and her former supervisor, Michael Graves, made defamatory statements about her. . . .
>
> . . . .
>
> On or about December 4, 2012, Plaintiff learned of an email and related documents, which contained false and defamatory statements about her. Plaintiff was questioned about the content of these documents at her deposition on December 5, 2012, at which time she testified that the statements attributed to her in said documents were false.
>
> On or about January 4, 2013, Defendant served Objections to Plaintiff's Deposition Notice to the PMK on behalf of AutoZone, Inc. Shortly after receiving Defendant's objections, Plaintiff's counsel began preparing a meet and confer letter as to the various topics listed in the PMK deposition notice. Meanwhile, in or around late January 2013, Plaintiff began exploring the possibility of settlement. In an effort to avoid incurring unnecessary litigation expenses, Plaintiff's meet and confer efforts were temporarily put on hold while making a good faith effort to explore a potential resolution. Discussions surrounding a potential resolution occurred from approximately early February 2013, until early April 2013. Once it became clear that resolution was unlikely, and with the close of discovery quickly approaching, Plaintiff served an Amended Notice of Deposition to the PMK on Behalf of AutoZone, Inc. on April 9, 2013. The PMK Deposition was to take place on April 26, 2013.

1         On or about April 16, 2013, the parties agreed
to reschedule the PMK Deposition to April 29, 2013.
2        Pursuant to this agreement, a Second Amended Notice
of Deposition to the PMK on Behalf of AutoZone,
3        Inc. was served on Defendant on April 17, 2013. On
April 29, 2013, Defendant produced Sheri Lemond and
4        Michael Graves to testify as Persons Most
Knowledgeable on Behalf of AutoZone, Inc.

5

6         After listening to the testimony of Lemond and
Graves, it became clear that Plaintiff had a viable
7        cause of action for defamation, against AutoZone,
and against Michael Graves as an individual.

8         Now, less than a month since the time such
testimony was received, Plaintiff brings this
9        Motion to Modify Court's Status (Pretrial
Scheduling) Order and for Leave to File a First
10       Amended Complaint, at her earliest opportunity.

11 (Id. at 3:21-5:14 (citations omitted).)

12       Defendant responds, arguing, *inter alia*, that "Plaintiff

13 failed to pursue the [proposed] amendment[s] with reasonable diligence."

14 (Def.'s Opp'n 2:14.) Defendant argues:

15        [Plaintiff] claims to have been unaware of the
allegedly defamatory remarks until December 4,
16       2012, when Defendant produced internal memos
concerning her job abandonment. However, in the
17       intervening 5 ½ months, Plaintiff did nothing to
amend the pleadings - until midnight on the filing
18       deadline of May 20, 2013, after receipt of
Defendant's pending summary judgment motion.

19

20 (Id. at 2:3-7.)

21       Rule 16 prescribes: "[a] schedule may be modified only for

22 good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "A

23 court's evaluation of good cause is not coextensive with an inquiry into

24 the propriety of the amendment under Rule 15." Johnson v. Mammoth

25 Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992) (internal quotation

26 marks, internal ellipses, and citation omitted). "Rule 16(b)'s 'good

27 cause' standard primarily considers the diligence of the party seeking

28

the amendment. . . . If that party was not diligent, the inquiry should end." Id.

When the proposed modification is the timing within which a party may seek to amend its pleadings, the moving party may establish good cause by showing:

> (1) that [she] was diligent in assisting the court in creating a workable Rule 16 order; (2) that [her] noncompliance with a [R]ule 16 deadline occurred or will occur, notwithstanding [her] diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference; and (3) **that [she] was diligent in seeking amendment of the Rule 16 order, once it became apparent that [she] could not comply with the order.**

Hood v. Hartford Life & Acc. Ins. Co., 567 F. Supp. 2d 1121, 1124 (E.D. Cal. 2008) (emphasis added) (quoting Jackson v. Laureate, Inc., 186 F.R.D. 605, 608 (E.D. Cal. 1999)); see also Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1087 (9th Cir. 2002) (affirming district court's denial of the plaintiff's motion to modify the scheduling order when the plaintiff waited four months after learning of the need for the requested modifications before seeking relief).

Here, Plaintiff alleges she learned facts which form the basis of a defamation claim on December 4, 2012. However, Plaintiff did not file her motion to modify the Status Order until May 20, 2012, more than five months later. The only justification Plaintiff proffers for this delay is alleged settlement negotiations that "occurred from approximately early February 2013, until early April 2013." (Pl.'s Mot. 4:19-24.) However, "[t]hat Plaintiff did not want to . . . complicate settlement discussions by [seeking to modify the status order] does not demonstrate diligence." Ichimura v. Deutsche Bank Nat'l Trust Co., No. 11-00318 SOM/RLP, 2013 WL 4657598, at *3 (D. Haw. Aug. 29, 2013).

Plaintiff has not shown that she could not have sought to modify the status order earlier despite whatever efforts were involved in negotiating a potential resolution of this action. Cf. Carr Chevrolet v. Amer. Hardware, No. Civ. 01-1508-AA, 2003 WL 23590747, at *2 (D. Or. Dec. 8, 2003) (stating the "plaintiff's reason for delay [in requesting leave to amend its complaint] (adversely impacting a potential settlement) does not satisfy the 'good cause' standard required by Rule 16(b)"). Accordingly, Plaintiff "ha[s] failed to demonstrate diligence in seeking amendment." Eckert Cold Storage, Inc. v. Behl, 943 F. Supp. 1230, 1233 (E.D. Cal. 1996) (denying the plaintiffs' motion "for leave to add a sixth cause of action" where the plaintiffs "waited up to seven months . . . before filing the motion to amend").

For the stated reasons, Plaintiff has not shown good cause to modify the Status Order to permit her to seek leave to amend her Complaint. Therefore, Plaintiff's motion to modify the Status Order and for leave to file a first amended complaint is DENIED.

## II. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant seeks summary judgment on each of Plaintiff's claims. Plaintiff's Complaint comprises employment law claims under California's Fair Employment and Housing Act ("FEHA") and an adverse employment action in violation of public policy claim.

### A. Legal Standard

A party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case." Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2003) (quoting Anderson v. Liberty Lobby,

<u>Inc.</u>, 477 U.S. 242, 248 (1986)). An issue of material fact is "genuine" when "'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" <u>Id.</u> (quoting <u>Anderson</u>, 477 U.S. at 248). To meet this burden, the movant must "inform[] the district court of the basis for its motion, and identify[] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp.</u>, 477 U.S. at 323 (internal quotation marks omitted).

If the movant satisfies its "initial burden," "the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, '*specific facts* showing that there is a genuine issue for trial.'" <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987) (quoting former Fed. R. Civ. P. 56(e)); <u>see also</u> Fed. R. Civ. P. 56(c)(1). The nonmoving party "cannot 'rest upon the mere allegations or denials of the adverse party's pleading' but must instead produce evidence that 'set[s] forth specific facts showing that there is a genuine issue for trial.'" <u>Tucker ex rel. Tucker v. Interscope Records, Inc.</u>, 515 F.3d 1019, 1030 (9th Cir. 2008) (quoting <u>Anderson</u>, 477 U.S. at 248). In evaluating the motion under Rule 56, "evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in favor of that party." <u>Sec. & Exch. Comm'n v. Todd</u>, 642 F.3d 1207, 1215 (9th Cir. 2011) (citing <u>Johnson v. Paradise Valley Unified Sch. Dist.</u>, 251 F.3d 1222, 1227 (9th Cir. 2001)).

Further, Local Rule 260(b) prescribes:

> Any party opposing a motion for summary judgment or summary adjudication [must] reproduce the itemized facts in the [moving party's] Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the

> particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial.

If the nonmovant does not "specifically . . . [controvert duly supported] facts identified in the [movant's] statement of undisputed facts," the nonmovant "is deemed to have admitted the validity of the facts contained in the [movant's] statement." <u>Beard v. Banks</u>, 548 U.S. 521, 527 (2006).

> Because a district court has no independent duty "to scour the record in search of a genuine issue of triable fact," and may "rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment," . . . the district court . . . [is] under no obligation to undertake a cumbersome review of the record on the [nonmoving party's] behalf.

<u>Simmons v. Navajo Cnty., Ariz.</u>, 609 F.3d 1011, 1017 (9th Cir.2010) (quoting <u>Keenan v. Allan</u>, 91 F.3d 1275, 1279 (9th Cir. 1996)); <u>see also</u> Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

**B.  Uncontroverted Facts**

Based upon Defendant's undisputed facts and the supporting evidence submitted by each party under Local Rule 260(b), the following facts are uncontroverted in the summary judgment record:

Plaintiff was hired in August 2008, as a part-time Parts Sales Manager ("PSM") in Defendant's Placerville store. (Decl. of Kim Johnson in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Decl.") ¶ 3, ECF No. 24-7; Pl.'s Dep. 12:5-13:8, 34:8-10.) Plaintiff was reclassified as a full-time PSM around February of 2009. (Pl.'s Dep. 33:23-34:4, 38:8-12, 39:14-17; Pl.'s Decl. ¶ 4.) Although Plaintiff was "hired into the Placerville store[,]" she also worked in Defendant's Cameron Park store. (Pl.'s Dep.

at 34:8-10, 39:18-40:11.) The two stores are approximately ten to fifteen miles apart. (Id. at 40:7-8.)

Defendant's stores are patronized by commercial and retail customers. (Decl. of Michael Graves in Supp. of Def.'s Mot. for Summ. J. ("Graves' Decl.") ¶ 12, ECF No. 19.) "Commercial customers are auto repair businesses, and retail customers are walk-in customers." (Id.)

> [S]tores that reach a certain threshold of sales have their own commercial staff who assist commercial customers with their retail needs . . . . Commercial customers are not required to shop exclusively through the commercial department; they may also come to the store, shop, and check out at the main registers (also known as the "do it yourself" or "DIY" side of the store) as retail customers.

(Id.) During Plaintiff's employment with Defendant, the Placerville store had a commercial program, as well as a DIY operation. (Id.)

Defendant "allocates commercial payroll hours to stores based on sales." (Pl.'s Resp. to Def's Statement of Undisputed Material Facts ("UMF") No. 13, ECF No. 24-8; see also Graves' Decl. ¶ 15.) "If [a] commercial program does not meet its sales targets, it cannot support the payroll hours allotted . . . and . . . payroll hours" are reduced accordingly. (Graves' Decl. ¶ 15.) The reduction of payroll hours because of insufficient commercial sales "may result in the elimination of a position." (Id. at ¶ 15.)

In April 2009, Bob Deelersnyder worked in a commercial sales position in Defendant's Placerville store. (Compl. ¶ 22, ECF No. 1.) Around this time, Plaintiff began performing the duties of a commercial driver, while working as a PSM. (Id., Graves' Decl. ¶ 7.) Deelersnyder "did not like going outside of the store to make deliveries and recruit new customers[,]" and "Plaintiff was pleased with the opportunity to get out of the store from time to time." (Compl. ¶ 22.)

"In or around October 2009, [Deelersnyder] left" Defendant's employment. (Id. ¶ 24.) Shortly thereafter, Plaintiff approached her store manager, Bill McCallister, and the district manager, Michael Graves[1], about filling the Placerville store's commercial position. (Id. ¶¶ 13, 19, 25; UMF Nos. 55-56; Pl.'s Dep. 43:21-45:25.) Plaintiff was given the commercial sales position and an increase in pay.[2] (UMF Nos. 11, 33; Graves' Decl. ¶¶ 6, 8; Graves' Dep. 64:24-65:7.)

Commercial sales staff "are expected to meet or exceed their sales targets, which are set based on the sales their stores did the previous year." (Graves' Decl. ¶ 14.) "Deelersnyder . . . was expected to meet or exceed sales targets that were based on the sales the Placerville store did the previous year. He took an unprofitable commercial department and built it up." (Id.) "When [Deelersnyder] left, [Plaintiff] was also expected to meet or exceed sales targets that were set based on the sales the Placerville store did during the previous year, which were higher due to . . . Deelersnyder's efforts." (Id.)

Plaintiff had a weekly sales target of $4,000 and understood that she had to meet that target to keep her commercial sales position.

---

[1]    As a district manager, Graves oversees multiple stores, including the Placerville and Cameron Park stores. (Graves' Decl. ¶¶ 4, 6.)

[2]    The parties dispute the specific commercial sales positions held by Deelersnyder and Plaintiff. (See UMF No. 11.) Plaintiff declares that Deelersnyder was a "Commercial Sales Manager," and that she also held a "Commercial Sales Manager" position after Deelersnyder left. (Pl.'s Decl. ¶¶ 7, 17.) Plaintiff also avers that she was reclassified as a "Commercial Specialist" after her first month performing commercial sales. (Id. ¶ 19.) Defendant contends that both Deelersnyder and Plaintiff held a "Commercial Specialist" position, and that Plaintiff never worked as a "Commercial Sales Manager." (Def.'s Reply 3 n.5, ECF No. 29.) This dispute does not affect decision on Defendant's summary judgment motion; the summary judgment record contains no evidence that there is any difference in pay or responsibilities between the two titles.

(UMF No. 14; Compl. ¶ 25; Pl.'s Dep. 48:15-20, 55:13-19, 123:4-25, 168:23-25.) Plaintiff met her sales target during the first month that she performed commercial sales duties, but her sales subsequently "dropped off a lot." (Pl.'s Dep. 125:8-126:25.)

In December of 2009, Graves learned that "the hours for the [c]ommercial [sales] position in the Placerville store had been reduced from forty to zero[, which] meant that . . . the [c]ommercial [s]ales position was eliminated." (Graves' Decl. ¶ 17.) "As a result, . . . another [available] position" had to be identified for Plaintiff, or she would be terminated. (Id.) Graves determined that Plaintiff "could not [be] absorb[ed] . . . in the Placerville store because it was fully staffed." (Id.) However, a "PSM position" was available at the Cameron Park store, and "because it was a lateral transfer[, Plaintiff] would retain her manager status and pay." (Id.) Graves "was also aware that [Plaintiff] had worked at the Cameron Park store." (Id.)

"On December 28, 2009, at approximately 9:00 a.m., [Graves and McCallister] informed Plaintiff that her [commercial sales] position had been eliminated because [she] was not making enough sales in the commercial program to support a [c]ommercial [sales] position." (UMF No. 23.) "Graves offered to place Plaintiff in a lateral PSM position at the Cameron Park store starting the following week . . . at no reduction in pay or loss of managerial status." (UMF No. 24.) After learning her commercial sales position was being eliminated, Plaintiff left the store. (Pl.'s Dep. 110:22-111:9; Graves' Decl. ¶ 19.) Plaintiff was on the schedule to work in the Placerville store for the remainder of the week. (UMF No. 26.) Had she not walked out of the store, Plaintiff "would have completed her work shift for the week and the day[,]" and "would have started in Cameron Park . . . the following week." (Graves' Dep. 26:4-

11.) On December 28, 2009, "Plaintiff's managers did not tell [her] that she did not have to report at [the] Placerville store [for the remainder of] that week." (UMF No. 27.)

After Plaintiff left the Placerville store, Graves communicated with Defendant's Human Resources Generalist, Shari Lemond, concerning what occurred the morning of December 28, 2009. (Graves' Decl. ¶¶ 19-20; Graves' Decl. Ex. 3.) Graves subsequently "terminated [Plaintiff's] employment" for job abandonment. (Id. ¶ 20.) "At 9:43 a.m., [Graves] emailed [Defendant's] payroll department in Memphis requesting a final check for [Plaintiff]. [Graves] copied Ms. Lemond and [Defendant's Human Resources Regional Manager, Troy] Keach[,] on [that] email. Neither Ms. Lemond nor Mr. Keach contacted [Graves] with any disagreement with the termination decision." (Id.; Graves' Decl. Ex. 4.)

On December 29, 2009, Plaintiff called the Cameron Park store to speak with the store manager, Dan Carbine, about being placed on the Cameron Park store's schedule. (Pl.'s Decl. ¶ 29.) "Carbine informed [Plaintiff] that he was unable to put [Plaintiff] on the schedule because [she] had been terminated for job abandonment on . . . December 28, 2009[, and] . . . was not eligible for rehire." (Id.)

Defendant "requires [its] employees to work all scheduled hours." (UMF No. 37.) Defendant expects its "employees [to] notify management if they are going to leave early[,]" and "[i]t is [Defendant's] policy that an employee c[an] be terminated if they walk off the job." (UMF Nos. 38-39.)

**C.   Discussion**

**1)   Gender Discrimination in Violation of FEHA**

Plaintiff alleges she was discriminated against on the basis of gender in violation of FEHA by (1) being held to a higher standard as

1  a commercial sales staff person; (2) being offered a transfer from her

2  commercial sales position in the Placerville store to a PSM position in

3  the Cameron Park store; and (3) being terminated after she left the

4  Placerville store on December 28, 2009. (Pl.'s Mem. of P.&A. in Opp'n to

5  Def.'s Mot. for Summ. J. ("Pl.'s Opp'n") 3:18-20, 3:28-4:2, 4:20-22, ECF

6  No. 24.)

7      Defendant seeks summary judgment on Plaintiff's gender

8  discrimination claim arguing Plaintiff cannot satisfy her burden of

9  establishing a prima facie case of discrimination. (Def.'s Mem. of P.&A.

10 in Supp. of Mot. for Summ. J. ("Def.'s Mot.") 11:24, 12:2-4, ECF No. 16.)

11 Defendant argues, *inter alia*, Plaintiff can show neither that "she

12 suffered an adverse employment action," nor that "the circumstances raise

13 an inference of discrimination." (Id. at 12:2-4, 13:8, 14:15-16:13.)

14 Defendant further argues that even if Plaintiff could establish a prima

15 facie case regarding her separation from employment, Defendant had a

16 legitimate, nondiscriminatory reason for its action, and Plaintiff "lacks

17 specific and substantial evidence of pretext." (Id. at 22:3-9.)

18     "The California Supreme Court has adopted the tripartite

19 burden-shifting framework established in McDonnell Douglas Corp. v.

20 Green, 411 U.S. 792, 802-04 (1973), to analyze disparate treatment

21 claims." Lawler v. Montblanc N. Am., LLC, 704 F.3d 1235, 1242 (9th Cir.

22 2013) (citing Guz v. Bechtel Nat'l Inc., 24 Cal. 4th 317, 354 (2000)).

23 Under this procedural rule, "the plaintiff has the initial burden of

24 establishing a prima facie case of discrimination." Id. (citing Guz, 24

25 Cal. 4th at 354).

26     To show a prima facie case of discrimination under FEHA, an

27 employee must show that "(1) [s]he was a member of a protected class, (2)

28 [s]he . . . was performing competently in the position [s]he held, (3)

12

[s]he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive." <u>Guz</u>, 24 Cal. 4th at 355; <u>accord</u> <u>Lawler</u>, 704 F.3d at 1242.

"Once a prima facie case is shown, a presumption of discrimination arises and the burden shifts to the defendant to show that the adverse employment action was taken for a legitimate, nondiscriminatory reason." <u>Lawler</u>, 704 F.3d at 1242 (citing <u>Guz</u>, 24 Cal. 4th at 355-56). " '[L]egitimate' reasons in this context are reasons that are facially unrelated to prohibited bias . . . ." <u>Id.</u> at 1243 (quoting <u>Guz</u>, 24 Cal. 4th at 358).

"Stating a legitimate, nondiscriminatory reason negates the presumption of discrimination and shifts the burden back to the plaintiff to demonstrate that the proffered reason is mere pretext for discrimination." <u>Id.</u> (citing <u>Guz</u>, 24 Cal. 4th at 356). To show pretext using circumstantial evidence, "[a] plaintiff must offer 'specific' and 'substantial' circumstantial evidence." <u>Id.</u> at 1244 (quoting <u>Winarto v. Toshiba Am. Elecs. Components, Inc.</u>, 274 F.3d 1276, 1284 (9th Cir. 2001)); <u>see also</u> <u>Batarse v. Serv. Emps. Int'l Union Local 1000</u>, 209 Cal. App. 4th 820, 835-36 (2012). Speculation regarding an employer's motives is not substantial responsive evidence. <u>Cucuzza v. City of Santa Clara</u>, 104 Cal. App. 4th 1031, 1038 (2002). Rather, Plaintiff "must set forth specific facts demonstrating 'such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.'" <u>Id.</u> (quoting <u>Hersant v. Dept. of Soc. Servs.</u>, 57 Cal. App. 4th 997, 1005 (1997)).

When an employer moves for summary judgment, however, "the burden is reversed . . . because the defendant

who seeks summary judgment bears the initial burden. Thus, [t]o prevail on summary judgment, [the employer is] required to show either that (1) [the] plaintiff could not establish one of the elements of [the] FEHA claim or (2) there was a legitimate, nondiscriminatory reason for its decision . . . . If the employer meets its burden, the discharged employee must demonstrate either that the defendant's showing was in fact insufficient or . . . that there was a triable issue of fact material to the defendant's showing."

Lawler, 704 F.3d at 1242 (alternations in original) (citations omitted) (quoting Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc., 642 F.3d 728, 745—46 (9th Cir. 2011)); see also Jones v. Dep't of Corr. & Rehab., 152 Cal. App. 4th 1367, 1379 (2007).

**a)   Plaintiff's Termination**

Defendant has articulated a "legitimate, nondiscriminatory reason" for Plaintiff's termination, which if true, would "preclude a finding of discrimination." Guz, 24 Cal. 4th at 358 (emphasis omitted). Graves declares that Plaintiff was "terminated" for "job abandonment" after Plaintiff walked off the job on December 28, 2009. (Graves' Decl. ¶¶ 19-20.)

Plaintiff argues several bases demonstrate Defendant's stated reason for her termination is pretextual: Graves made sexist comments during Plaintiff's employment as a commercial sales staff person, McCallister refused to communicate with Plaintiff after she made complaints to Defendant's human resources department, Plaintiff received disparate treatment as a commercial salesperson, inconsistencies in testimony exist concerning the stated reason for Plaintiff's termination, and Plaintiff disputes whether she abandoned her job on December 28, 2009. These arguments are addressed in turn below.

**i)   Graves' Comments**

1    Plaintiff contends Graves made sexist comments during her
2    employment as a commercial sales staff person. (Pl.'s Opp'n 4:14-16.)
3    Specifically, Plaintiff testified during her deposition that she
4    overheard Graves state during a conference call: "Are you going to let
5    a girl beat you?" (Pl.'s Dep. 160:19-161:5.) Plaintiff also testified
6    that Graves asked her "what her filter was" when she delivered parts.
7    (Id. at 158:16-24.) Plaintiff avers that she "took [the filter] question
8    to implicate a woman should not be" in a commercial sales position.
9    (Pl.'s Decl. ¶ 13.)

10    Defendant counters that "[Plaintiff] offers no evidence to
11   refute that [Graves'] comment[s] (if made) w[ere] more than . . . non-
12   actionable stray remark[s]." (Def.'s Reply 4:9-15.)

13    "Comments suggesting that the employer may have considered
14   impermissible factors are clearly relevant to a [discrimination] claim."
15   Merrick v. Farmers Ins. Grp., 892 F.2d 1434, 1438 (1990). However,
16   "'stray' remarks are insufficient to establish discrimination." Graves'
17   comments, which were ambiguous and "'unrelated to the decisional process,
18   are insufficient to demonstrate that [Defendant] relied on illegitimate
19   criteria'" in her termination. Hardin v. Wal-Mart Stores, Inc., No. CIV-
20   F-08-0617 AWI BAM, 2012 WL 691707, at *23 (E.D. Cal. Mar. 2, 2012)
21   (quoting Smith v. Firestone Tire & Rubber Co., 875 F.2d 1325, 1330 (7th
22   Cir. 1989)); see also Harris v. City of Santa Monica, 56 Cal. 4th 203,
23   231 (2013) (stating FEHA "does not purport to outlaw discriminatory
24   thoughts, beliefs, or stray remarks that are unconnected to employment
25   decisionmaking").

26           **ii) McCallister's Refusal to Speak to Plaintiff**

27    Plaintiff also argues McCallister "summarily refused to have
28   any communication with [her] after she made complaints to HR." (Pl.'s

15

Opp'n 4:16-19.) However, this contention is not properly supported by evidence in the record. Plaintiff does not "'identify with reasonable particularity'" any evidence to support this argument; instead, she cites to her entire deposition generally. <u>Simmons</u>, 609 F.3d at 1017 (quoting <u>Keenan v. Allan</u>, 91 F.3d 1275, 1279 (9th Cir. 1996)); <u>see also</u> <u>Carmen v. S.F. Unified Sch. Dist.</u>, 237 F.3d 1026, 1031 (9th Cir. 2001) (stating "the district court may limit its [summary judgment] review to the documents submitted for the purposes of summary judgment and those parts of the record specifically referenced therein"). "The district court [is not required to] examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." <u>Carmen</u>, 237 F.3d at 1031.

> If the district court . . . searches the whole record, in practical effect, the court becomes the lawyer for the respondent, performing the lawyer's duty of setting forth specific facts showing that there is a genuine issue for trial. The movant is then denied a fair opportunity to address the matter in the reply papers.

<u>Id.</u>; <u>see also</u> <u>Gaurino v. Brookfield Twp. Trs.</u>, 980 F.2d 399, 406 (6th Cir. 1992) ("[I]t is utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion. Such a role would carry the court far beyond simply reviewing evidence in 'the light most favorable to the non-moving party,' or giving effect to inferences reasonably arising from the designated evidence.").

### iii) Disparate Treatment

Plaintiff further contends that "she was held to a higher standard [as a commercial salesperson] because of her gender." (Pl.'s

Opp'n 4:1-2.) Specifically, Plaintiff avers: "Deelersnyder did not maintain a $4,000 per week commercial sales rate, nor was he required to [do so] during his tenure[;]" and "[d]espite . . . numerous requests, [she] was never offered formal training on the role and responsibilities of the [commercial sales] position[, whereas] Bob Deelersnyder was offered a three-day off-site training when he became a [commercial salesperson]." (Pl.'s Decl. ¶¶ 9, 23, 24.)

Defendant counters: "Plaintiff . . . lacks admissible evidence to corroborate her assertion that Mr. Deelersnyder was held to a lower standard" and "lacks evidence that she was treated worse than [any other] similar situated males." (Def.'s Reply 4:16-5:6.)

Although "[s]howing disparate treatment or policy enforcement [can be] a permissible means to establish pretext[,]" Plaintiff has not presented any admissible evidence demonstrating that she was treated differently than Deelersynder or another "similarly situated" male employee. <u>Wills v. Super. Ct.</u>, 195 Cal. App. 4th 143, 172 (2011).

Defendant objects to Plaintiff's averments contained in paragraphs nine and twenty-three of her declaration, which concern Deelersnyder's alleged lack of sales requirements, on the grounds that Plaintiff's statements "constitute conclusory opinion and lack factual basis." (Def.'s Objections & Mot. to Strike Decl. of Kim Johnson Re Mot. for Summ. J. ("Def.'s Objs.") 2:23-28, 23:2-16, ECF No. 28.) These evidentiary objections are sustained, since Plaintiff has neither shown personal knowledge on the issue of Deelersnyder's sales requirements, nor can personal knowledge be "reasonably inferred from [her] position[]." <u>Barthelemy v. Air Lines Pilots Ass'n</u>, 879 F.2d 999, 1018 (9th Cir. 1990) (discussing Rule 56's requirement that declarations used to support or oppose a motion for summary judgment must be made on personal knowledge);

see also Block v. City of L.A., 253 F.3d 410, 419 (2001) (indicating it
was error for the district court to consider a declaration in deciding
a summary judgment motion where it was "[n]ot made on personal
knowledge," but instead appeared "based on inadmissible hearsay"). Rule
56(c)(4) prescribes: "An affidavit or declaration used to support or
oppose a motion must be made on personal knowledge, set out facts that
would be admissible in evidence, and show that the affiant or declarant
is competent to testify."

          Further, although Plaintiff avers that she was not offered
"formal" training as a commercial salesperson, it is undisputed that she
received a variety of training for that position. When Deelersnyder
worked as a commercial salesperson, he "show[ed] [Plaintiff] little
things that he was doing." (UMF No. 20; Pl.'s Dep. 134:24-135:2.)
Plaintiff also had "conversations" with Graves, McCallister, and human
resources personnel regarding Plaintiff's desire for additional training.
(Pl.'s Dep. 127:9-21, 136:24-137:7.) In response to Plaintiff's expressed
concerns, Defendant sent Plaintiff to its Rancho Cordova store to learn
from Jim Lynch, a commercial salesperson. (Id. at 128:13-129:6; Graves'
Dep. 68:18-69:3.) Defendant also brought in Hal Beuttner ("BJ") to the
Placerville store "for a couple days" to assist Plaintiff in learning her
commercial sales duties. (UMF No. 18; Pl.'s Dep. 128:1-7, 129:7-9;
Graves' Dep. 69:3-5.) Further, Plaintiff met with Katherine White from
Defendant's district office, who instructed Plaintiff on "how to print
up a list of [daily] invoices" and was "there if [Plaintiff] needed to
ask her any questions." (Pl.'s Dep. 137:4-22, 139:6-21.) Therefore,
Plaintiff has not shown any disparate treatment between herself and
Deelersnyder.

### iv) Contradictions Concerning Circumstances Surrounding Termination

Plaintiff also argues that "[p]retext [is] demonstrated" by the inconsistent deposition testimony Graves and Human Resources Generalist Sheri Lemond gave concerning Plaintiff's termination. (Pl.'s Opp'n 5:2-27.) Specifically, Plaintiff argues that Graves testified he terminated Plaintiff at the direction of Lemond, whereas Lemond testified that she does not know who made the decision to terminate Plaintiff and that she did not have the authority to fire Plaintiff. (Id.)

Defendant replies: "[a]ny mistake by Mr. Graves regarding Ms. Lemond's authority, instruction[,] or silence is immaterial; his belief and actions were reasonable." (Def.'s Reply 6:17-20.) Defendant argues:

> Mr. Graves' belief was reasonable. He typically consulted with Human Resources before separating employees, and he did so with Plaintiff. Ms. Lemond testified that she may have spoken to Mr. Graves, though she does not recall. He sent contemporaneous emails to Ms. Lemond and [Human Resources Regional Manager] Troy Keach regarding Plaintiff's actions (one of which included the separation decision), and neither notified him of any disagreement. . . .
>
> Here, Defendant has not offered shifting, inconsistent, or conflicting reasons for the separation; Defendant has consistently maintained that Plaintiff walked off her job. Whether Ms. Lemond had authority or actually recommended termination is beside the point. The critical inquiry is whether Mr. Graves honestly and reasonably believed that Plaintiff abandoned her job and received instruction to terminate her.

(Id. at 6:12-7:6.)

"A triable issue as to an employer's veracity 'may arise where the employer has given shifting, contradictory, implausible, uninformed, or factually baseless justifications for its actions." Reeves v. MV Transp., Inc., 186 Cal. App. 4th 666, 677 (2010). However, any

1  "discrepancy [concerning the instructions or lack thereof provided by

2  Lemond] d[oes] not qualify as a shifting [or contradictory] rationale for

3  the [termination] decision." Id. at 678-79. Plaintiff has presented no

4  evidence that Defendant has given any reason for Plaintiff's termination

5  other than job abandonment. The referenced contradictions "are not the

6  kind of 'fundamentally different justifications' for an employment

7  decision that create[] triable issues." Id. at 680 (quoting EEOC v. Ethan

8  Allen, Inc., 44 F.3d 116, 120 (2d Cir. 1994)). "There is nothing

9  unreasonable or incredible about the asserted reason for [P]laintiff's

10  termination that would indicate it was a pretext for discrimination. .

11  . ." Batarse, 209 Cal. App. 4th at 837.

12                    **v)   Factual Dispute Concerning Job Abandonment**

13          Plaintiff further argues that "there is a material disputed

14  fact as to whether [she] walked off the job" on December 28, 2009. (Pl.'s

15  Opp'n 4:9-10.) Defendant rejoins: "Plaintiff disagrees that she walked

16  off the job, but the critical inquiry is whether Defendant honestly and

17  reasonably believed [that] she [did]." (Def.'s Reply 1:10-12.)

18          "In demonstrating that an employer's proffered

19  nondiscriminatory reason is false or pretextual, '[plaintiff] cannot

20  simply show that the employer's decision was wrong or mistaken since the

21  factual dispute at issue is whether discriminatory animus motivated the

22  employer, not whether the employer is wise, shrewd, prudent, or

23  competent.'" Sandell v. Taylor-Listug, Inc., 188 Cal. App. 4th 297, 314

24  (2010) (quoting Hersant, 57 Cal. App. 4th at 1005). "It is the employer's

25  honest belief in the stated reasons for firing an employee and not the

26  objective truth or falsity of the underlying facts that is at issue in

27  a discrimination case." King v. UPS, Inc., 152 Cal. App. 4th 426, 436

28  (2007). Therefore, a dispute concerning whether Plaintiff walked off the

1  job does not create a triable issue regarding whether Defendant's stated

2  reason for terminating Plaintiff is pretextual.

3          For the stated reasons, "[Defendant] met its burden to

4  establish a legitimate, nondiscriminatory reason for terminating

5  [Plaintiff's] employment and [Plaintiff] failed to present substantial

6  evidence showing that reason was false or a pretext for discrimination."

7  Wills, 195 Cal. App. 4th at 173.

8              **b)   Other Alleged Adverse Actions**

9          Defendant contends that Plaintiff cannot establish a prima

10  facie case concerning her remaining allegations of gender discrimination

11  since neither "Plaintiff's [offered] transfer to a PSM position in the

12  nearby Cameron Park store" nor her alleged mistreatment by McCallister

13  constitutes adverse employment actions under FEHA. (Def.'s Mot. 14:8-13;

14  Def.'s Reply 2:3-14.)

15         "An 'adverse employment action' . . . requires a 'substantial

16  adverse change in the terms and conditions of the plaintiff's

17  employment." Holmes v. Petrovich Dev. Co., LLC, 191 Cal. App. 4th 1047,

18  1063 (2011) (quoting Akers v. Cnty. of San Diego, 95 Cal. App. 4th 1441,

19  1454, 1455 (2002)). Thus, "[n]ot every employment decision amounts to an

20  adverse employment action," Strother v. S. Cal. Permanente Med. Grp., 79

21  F.3d 859, 869 (9th Cir. 1996), and "[m]inor or relatively trivial adverse

22  actions . . . are not actionable." Yanowitz v. L'Oreal USA, Inc., 36 Cal.

23  4th 1028, 1054 (2005). "'A change that is merely contrary to the

24  employee's interests or not to the employee's liking is insufficient. .

25  . . The plaintiff must show the employer's . . . actions had a

26  detrimental and substantial effect on the plaintiff's employment.'"

27  Malais v. L.A. City Fire Dept., 150 Cal. App. 4th 350, 357-58 (2007)

28  (quoting McRae v. Dept. of Corrs. & Rehab., 142 Cal. App. 4th 377, 386-87

(2006)); see also Yanowitz, 36 Cal. 4th at 1054-55 ("[A]dverse treatment that is reasonably likely to impair a reasonable employee's job performance or prospects for advancement or promotion falls within the reach of the antidiscrimination provisions of [FEHA].").

Plaintiff's proposed transfer to a PSM position in the Cameron Park store was a lateral transfer that would not have resulted in a loss of pay or management status. (UMF No. 24.)

> "[A] plaintiff who is made to undertake . . . a lateral transfer—that is, one in which she suffers no diminution in pay or benefits—does not suffer an actionable injury unless there are some other materially adverse consequences . . . such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm."

McRae, 142 Cal. App. 4th at 325 (second omission in original) (quoting Brown v. Brody, 199 F.3d 446, 457 (D.C. Cir. 1999)). Plaintiff contends that "[most] employees prefer [a c]ommercial [sales] position because it has more desirable hours." (UMF No. 24.) However, "[m]ere idiosyncrasies of personal preference are not sufficient to state an injury." McRae, 142 Cal. App. 4th at 325 (quoting Brody, 199 F.3d at 457); see also Malais, 150 Cal. App. 4th at 358-359 (affirming summary judgment granted in favor of defendant in disability discrimination action where "the only reason [Plaintiff] was dissatisfied with [a lateral transfer] was that he preferred the work, schedule, and camaraderie of [his former position to that of his new position]"). Since Plaintiff's proposed transfer was "into a comparable position that [would] not result in substantial and tangible harm[,]" it does not constitute an adverse employment action.

Further, Plaintiff has not presented admissible evidence supporting her conclusory averments that she was mistreated because of her gender. Plaintiff declares that "McCallister . . . berat[ed] her for alleged mistakes in front of other [employees], undermining [her]

22

managerial authority[,]" and "attempted to prevent [her] from maintaining sales at $4,000 per week" by "entering commercial sales through the [DIY] tracking side of the store, effectively taking sales away from commercial sales tracking." (Pl.'s Decl. ¶¶ 5, 12.) Plaintiff also avers: "McCallister demanded that [she] assist full time in the DIY side of the store[,]" and that she "believe[s] that other commercial [sales staff] were not required to [do so] based on [her] visits to the Rancho Cordova store." (Id. at ¶ 14.)

Defendant objects to these averments on the grounds that they are "conclusory opinion, call[] for a legal conclusion, and lack[] factual basis." (Def.'s Objs. 2:3-21, 4:19-5:28.)[3] These objections are sustained.

Plaintiff's averment that McCallister "berated" her is an unsupported conclusion and is belied by Plaintiff's following deposition testimony:

> Q. . . . Now you allege in your complaint that Bill McCallister berated you in front of other employees; is that true?
>
> A. I do. I couldn't tell you for instance though.
>
> Q. Okay. What do you mean by "berated"?
>
> A. I, I can't answer that.

(Pl.'s Dep. 199:6-11.) Further, Plaintiff has not shown personal knowledge on the issues of McCallister entering commercial sales in the DIY side of the store or whether Defendant requires other commercial

---

[3]     Defendant raises multiple other objections to evidence submitted by Plaintiff in support of her opposition to Defendant's summary judgment motion. Decision on these objections is unnecessary since the evidence objected to is not relied upon in ruling on Defendant's motion. See Burrell v. Cnty. of Santa Clara, No. 11-CV-04569-LHK, 2013 WL 2156374, at *2 (N.D. Cal. May 17, 2013) (declining to reach evidentiary objections to evidence not relied upon in deciding summary judgment motion).

sales staff to assist full-time in a store's DIY department. (See, e.g., Pl.'s Dep. 172:6-16; see also In re Sunset Bay Assocs., 944 F.2d 1503, 1520 n.19 (9th Cir. 1991) (indicating deposition testimony based upon the deponent's "belief" is inadmissible as "not based on personal knowledge" if the source of the deponent's belief is not shown).)

For the stated reasons, Defendant has shown that Plaintiff cannot establish a prima facie case concerning her remaining allegations of gender discrimination. Therefore, summary judgment is granted in favor of Defendant on Plaintiff's gender discrimination in violation of FEHA claim.

### 2)    Sexual Harassment in Violation of FEHA

Plaintiff does not oppose Defendant's summary judgment motion on her FEHA sexual harassment claim, stating: "[she] seeks to amend her complaint, in part, to dismiss her cause of action for sexual harassment . . . ." (Pl.'s Opp'n 3:12-14.)

Plaintiff's request to dismiss her FEHA sexual harassment claim is granted. Therefore, decision on Defendant's motion for summary judgment on this claim is unnecessary.

### 3)    Retaliation in Violation of FEHA

Plaintiff contends Defendant retaliated against her for engaging in protected activity in violation of FEHA when it 1) offered her a transfer to a PSM position in its Cameron Park store and 2) terminated her. (Pl.'s Opp'n 6:2-12.)

Defendant seeks summary judgment on Plaintiff's FEHA retaliation claim, arguing: "[f]or many of the same reasons fatal to the discrimination claim, Plaintiff fails to carry her burden to prove retaliation." (Def.'s Mot. 22:15-16.) Defendant contends, inter alia, that "Plaintiff suffered no cognizable adverse action" and "Plaintiff

lacks specific and substantial evidence to refute the fact that Mr. Graves honestly believed that Plaintiff's admitted conduct amounted to walking off the job and warranted separation." (Id. at 22:18-19, 24, 5-7.)

"[T]o establish a prima facie case of retaliation under . . . FEHA, a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." Yanowitz, 36 Cal. 4th at 1042. Adverse "employment actions that can give rise to a claim for retaliation are identical to the actions that can give rise to a claim for discrimination" under FEHA. Jones v. Lodge at Torrey Pines P'ship, 42 Cal. 4th 1158, 1168-69 (2008).

> Once an employee establishes a prima facie case, the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action. If the employer produces a legitimate reason for the adverse employment action, the presumption of retaliation 'drops out of the picture,' and the burden shifts back to the employee to prove intentional retaliation.

Id. (citation omitted) (quoting Morgan v. Regents of the Univ. of Cal., 88 Cal. App. 4th 52, 68 (2000)).

Defendant met its burden to establish a legitimate, nondiscriminatory reason for terminating Plaintiff's employment. However, Plaintiff presented insufficient evidence to permit drawing a reasonable inference that Defendant's stated reason was pretextual, and Plaintiff failed to raise a genuine issue of material fact that Defendant subjected her to any other adverse employment action.

       **4)     Failure to Prevent Discrimination / Retaliation under FEHA and Adverse Employment Action in Violation of Public Policy Claims**

Defendant also seeks summary judgment on Plaintiff's adverse employment action in violation of public policy claim and FEHA claim, in which she alleges that Defendant failed to prevent the discrimination and/or retaliation to which she alleges she was subjected. In essence, Defendant argues that these claims are derivative of Plaintiff's underlying FEHA discrimination and retaliation claims, and "[b]ecause [those] claims fail as a matter of law, summary judgment on [these] claim[s] is also proper." (Def.'s Mot. 24:9-20.)

Plaintiff does not contest that these claims are derivative of her FEHA discrimination and retaliation claims.

Since there is no underlying claim for discrimination or retaliation under FEHA, Plaintiff cannot maintain these claims. See Ricks v. United Air Lines, Inc., No. C 11-3637 PJH, 2013 WL 1003596, at *18 (N.D. Cal. Mar. 13, 2013) (citing Trujillo v. N. Cnty. Transit Dist., 63 Cal. App. 4th 280, 288-89 (1998)) ("There can be no independent claim for failure to prevent [discrimination and/or retaliation] absent an underlying claim of [discrimination and/or retaliation] under FEHA."); Hanson v. Lucky Stores, Inc., 74 Cal. App. 4th 215, 229 (1999) ("[B]ecause [Plaintiff's] FEHA claim[s] fail, h[er] claim for [adverse employment action] in violation of public policy fails.") Therefore, this portion of Defendant's motion is granted.

### III. CONCLUSION

For the stated reasons, Plaintiff's motion to modify the Status Order and for leave to file a first amended complaint is denied.

Further, Plaintiff's request to dismiss her sexual harassment FEHA claim is granted, and Defendant's motion for summary judgment is

granted on each of Plaintiff's remaining claims. Therefore, judgment shall be entered in favor of Defendant.

Dated:  September 11, 2013

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge